Approved: _____
JOHN P. COLLINS, JR.
Assistant United States Attorney

**ORIGINAL**

Before:   THE HONORABLE JUDITH C. McCARTHY
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - - - - x
                                             :
UNITED STATES OF AMERICA                     :
                                             :
        - v. -                               :
                                             :
                                             :
BINDER TAL,                                  :
BALDEV TAL,                                  :
    a/k/a "David Tal,"                       :
    a/k/a "Ashok Kumar," and                 :
SHARIFUL MINTU,                              :
                                             :
                    Defendants.              :
                                             :
- - - - - - - - - - - - - - - - - - - - - - x

15 mag 2641

**SEALED COMPLAINT**

Violation of
18 U.S.C. §§ 1349;
1956(h)

COUNTIES OF OFFENSE:
SULLIVAN,
DUTCHESS and
ORANGE

SOUTHERN DISTRICT OF NEW YORK, ss.:

        GREG GHIOZZI, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service ("USPIS"), and charges as follows:

COUNT ONE

(Conspiracy to Commit Bank Fraud)

        1.    From in or about 2007 through in or about July 2015, in the Southern District of New York and elsewhere, BINDER TAL, BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," and SHARIFUL MINTU, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, bank fraud, in violation of Title 18, United States Code, Section 1344.

        2.    It was a part and an object of said conspiracy

1

that BINDER TAL, BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," and SHARIFUL MINTU, the defendants, and others known and unknown, unlawfully, wilfully and knowingly having devised and intended to devise a scheme and artifice to defraud a financial institution, in violation of Title 18, United States Code, Section 1344(1).

3.   It was a further part and an object of said conspiracy that BINDER TAL, BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," and SHARIFUL MINTU, the defendants, and others known and unknown, wilfully and knowingly would and did execute and attempt to execute a scheme to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344(2).

(Title 18, United States Code, Section 1349.)

COUNT TWO

(Conspiracy to Commit Money Laundering)

4.   From in or about 2007 through in or about July 2015, in the Southern District of New York and elsewhere, BINDER TAL, BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," and SHARIFUL MINTU, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, money laundering, in violation of Title 18, United States Code, Sections 1956(a) (1)(B)(i) and 1957.

5.   It was a part and an object of said conspiracy that BINDER TAL, BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," and SHARIFUL MINTU, the defendants, and others known and unknown, wilfully and knowingly conducted and attempted to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, bank fraud, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

2

6.      It was a further part and an object of said conspiracy
that BINDER TAL, BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok
Kumar," and SHARIFUL MINTU, the defendants, and others known and
unknown, wilfully and knowingly engaged and attempted to
engage, in monetary transactions by, through or to a financial
institution, affecting interstate and foreign commerce, in
criminally derived property of a value greater than $10,000, such
property having been derived from a specified unlawful activity,
that is, bank fraud, in violation of Title 18, United States Code,
Section 1957.

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing
charge are, in part, as follows:

7.      I am assigned to the investigation of the
above-described offense.  This affidavit is based on my personal
participation in the investigation and my review of documents,
conversations with other law enforcement officers, and interviews
with witnesses about this matter.  Because this affidavit is
submitted for the limited purpose of establishing probable cause,
I have not set forth each and every fact learned during my
investigation.  Where actions, statements, or conversations of
others are related herein, they are related in substance and part
only.  Where contents of any documents are described, they are also
described in substance and in part only.

## The Scheme to Defraud

8.      From at least in or about 2007 through in or about
July 2015, BINDER TAL, BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok
Kumar," and SHARIFUL MINTU, the defendants, and others known and
unknown, fraudulently obtained loans and lines of credit from banks,
credit unions and other lending institutions (the "lenders").    The
defendants obtained the loans by providing materially false
information to the lenders about the borrowers' assets, including
but not limited to false information about the borrower's employment
and income.  Through their scheme, the defendants and their
co-conspirators fraudulently obtained more than $2.5 million in
proceeds in connection with dozens of loan applications and
applications for lines of credit.  The vast majority of the loans
and lines of credit went into default, and millions of dollars were
not repaid.

9.    As part of the scheme to defraud, the defendants used the proceeds to personally enrich themselves and their families. Fraudulently obtained proceeds from the loans and lines of credit were used toward, among other things, (i) credit card debts for personal expenses of defendants, (ii) debts arising from business expenses, and (iii) debts arising from other fraudulently obtained loans, to conceal the fraudulent nature of these loans.

10.    As part of the scheme to defraud, the defendants and others known and unknown also engaged in extensive efforts to perpetuate and conceal the fraudulent scheme.  These efforts included, but were not limited to, multiple members of the conspiracy acting as the borrowers for different loans, falsely claiming that the purpose of the loans was to purchase or finance used luxury automobiles, when, in fact many of the automobiles were never purchased or leased by the defendants or their co-conspirators, and the loan proceeds were later distributed to other members of the conspiracy and to entities they controlled.

11.    As part of the scheme to defraud, the defendants defrauded financial institutions, as that term is defined under Title 18, United States Code, Section 20.

### The February 2008 Personal Credit Card Fraud

12.    I have reviewed documents and received information from a credit union ("Credit Union 1"), a branch of which is located in or about Binghamton, New York, and learned the following:

   a. On or February 28, 2008, SHARIFUL MINTU, the defendant, applied for a personal credit card from Credit Union 1. On the application, he listed an address on Anna Court in Middletown, New York as his residence (the "Anna Court address") and an address on Raceway Road in Monticello, New York as the address of his employer (the "Raceway Road address").  MINTU claimed that he was employed, as a "Director," by a gas station at the Raceway Road address ("Gas Station 1") and claimed that his monthly salary was $10,000.

   b. In or about April 2008, MINTU began making $999.99 purchases on the Credit Union 1 credit card at his business, Gas Station 1.  In addition, during that same billing cycle, he purchased an airline ticket for BALDEV

TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," the defendant, for travel between Orlando, Florida and Dallas, Texas on American Airlines.

c. Within approximately two billing cycles, MINTU accumulated approximately $16,000 in charges. During the first year that MINTU had the credit card, he missed approximately five minimum payments. His last payment on this account was on April 30, 2009. Credit Union 1 has suffered a loss of $16,666.

13.   I have reviewed Internal Revenue Service ("IRS") records for SHARIFUL MINTU, the defendant, and learned that: (a) a W-2 was submitted by Gas Station 1 to the IRS in 2008 for SHARIFUL MINTU, the defendant, in the amount of $52,000; and (b) MINTU filed a United States Individual Income Tax Return, Form 1040, for the 2008 tax year, which states that his adjusted gross income was $52,044.

### The April 2008 Automobile Loan Fraud

14.   I have reviewed additional documents and received further information from Credit Union 1, a branch of which is also located in Poughkeepsie, New York, and learned the following:

a. On or about April 12, 2008, SHARIFUL MINTU, the defendant, applied for a $51,968.75 automobile loan. On the application, he listed the Anna Court address as his address and the Raceway Road address as the address of his employer.  MINTU claimed that he was employed by Gas Station 1 and also claimed his monthly salary was $15,000.

b. MINTU also submitted a purported receipt stating that a 2005 BMW 745i, with a Vehicle Identification Number ending in "5980," was sold by an Illinois car dealership, on or about April 10, 2008, to MINTU.  The amount of the sale was $26,195.

c. Thereafter, Credit Union 1 issued an official check in the amount of $26,195 to MINTU and the Illinois car dealership.  It also issued an official check in the amount of $25,773.75 to MINTU.

d. Thereafter, MINTU failed to make the required loan payments to Credit Union 1 and the loan is in default. The loss to Credit Union 1 is $49,225.

15.   I have reviewed documents from the Illinois car dealership and learned that the 2005 BMW 745i with a Vehicle Identification Number ending in "5980" was not sold to SHARIFUL MINTU, the defendant, but rather was sold to BALDEV TAL, the defendant, and "Empire Auto Group LLC" located in Levittown, Pennsylvania.

16.   I have reviewed IRS records for SHARIFUL MINTU, the defendant, and learned that: (a) a W-2 was submitted by Gas Station 1 to the IRS in 2008 for SHARIFUL MINTU, the defendant, in the amount of $52,000; and (b) MINTU filed a United States Individual Income Tax Return, Form 1040, for the 2008 tax year, which states that his adjusted gross income was $52,044.

### The May 2008 Attempted Automobile Loan Fraud

17.   I have reviewed documents and received information from a branch of a credit union ("Credit Union 2"), a branch of which is located in or about Binghamton, New York, and learned the following:

a. On or about May 20, 2008, BINDER TAL, the defendant, applied for a $40,943.75 automobile loan.  He listed an address on Academy Street in Liberty, New York as his residence (the "Academy Street address") and an address on Raceway Road in Monticello, New York as the address of his employer (the "Raceway Road address").  In support of his loan application, BINDER TAL provided a pay stub from a gas station located at the Raceway Road ("Gas Station 1") that claimed his monthly salary was $13,500.

b. BINDER TAL also submitted what purported to be a "Buyer's Order" from "Empire Motor Cars" in Levittown for a used 2006 Mercedes with a Vehicle Identification Number ending in "6709" with a total due of $40,943.75.

c. Thereafter, Credit Union 2 issued an official check in the amount of $40,000 to BINDER TAL and "Empire Motor Cars".  Later, after an employee of Credit Union 2 was unable to verify some of the information on the loan

application concerning "SF Engineering," Credit Union decided to deny the loan application and recall the check.

18.   I have reviewed IRS records for BINDER TAL, the defendant, and learned that: (a) no W-2s were submitted by any business to the IRS in 2008 in the name of BINDER TAL; and (b) BINDER TAL did not file a United States Individual Income Tax Return, Form 1040, for the 2008 tax year.

## The June 2008 Business Credit Card Fraud

19.   Law enforcement officers were contacted by an employee of a financial institution ("Bank 1") and informed that an individual had charged over $166,000 and was not making any further payments to the debt. I have reviewed documents from Bank 1 and learned the following:

   a. On or about June 19, 2008, BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," the defendant, applied for a business credit card. On the application, he listed the Academy Street address in Liberty, New York as the location of his residence and listed Gas Station 1 as his business.  He claimed that his total annual household income was $350,000. Thereafter, Bank 1 issued him a business credit card for Gas Station 1.

   b.  Although his credit limit was only $25,000, during the first billing cycle, BALDEV TAL accumulated $31,070.84 in charges.  Almost immediately, BALDEV TAL began making $999.99 purchases on the Bank 1 business credit card at his business, Gas Station 1.  In addition, during that same billing cycle, he made two charges in the amount of $1,065 on the same day at Caesar's Palace casino in Las Vegas.

   c. During the second billing cycle, he accumulated an additional $21,347.87 in charges – including approximately 17 purchases of $999.99 at his business – Gas Station 1 in Monticello, New York.  In addition, BALDEV TAL submitted two online payments totaling $46,200 – both of which were eventually reversed by Bank 1.

d. In the less than three months that BALDEV TAL used Bank 1's business credit card, he accumulated approximately $150,000 in charges – many of them consisting of either $999.99 purchases at Gas Station 1 or charges that appear to be cash advances at casinos in Las Vegas, Nevada or Atlantic City, New Jersey.  All of the approximately $166,000 in online payments he made were eventually reversed.

20.  I have reviewed IRS records for BALDEV TAL, the defendant, and learned that although he did not file a United States Individual Income Tax Return, Form 1040, for the 2008 tax year, he did file a Form 1040 for the 2007 tax year and claimed his total income was approximately $11,520.

### The July 2008 Attempted Automobile Loan Fraud

21.  I have reviewed documents and received information from a credit union ("Credit Union 3"), a branch of which is located in or about Middletown, New York, and learned the following:

a. On or about July 1, 2008, BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," the defendant, applied for a $75,000 automobile loan to purchase a used $100,000 Mercedes automobile.  Thereafter, on or about July 16, 2008, BALDEV TAL faxed his last two years of W-2s and paystubs to Credit Union 2.

b. On or about July 17, 2008, at their branch in Middletown, New York, BALDEV TAL informed Credit Union 3 that he wished to buy a specific vehicle – a 2007 Mercedes Benz S Class S600 for $120,116 and obtain an automobile loan for $95,000.  In addition, he provided what purported to be a "Buyer's Order", from "Empire Auto Group LLC" located in Levittown, Pennsylvania, stating that the total due for the 2007 Mercedes with a Vehicle Identification Number ending in "3798" was $120,116. He also provided Credit Union 3 with a receipt that reflected that he had paid $22,000 to "Empire Auto Group LLC".  He also completed a loan application in which he stated that he earned $9,148.15 on a monthly basis from a company called "SF Engineering" that allegedly was at the same address as Gas Station 1.

8

     c. After an employee of Credit Union 3 was unable to verify some of the information on the loan application concerning "SF Engineering," the application was denied.

22.   I have reviewed IRS records for BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," the defendant, and learned that the W-2s that he submitted to Credit Union 3 are fraudulent. Although the employer and employee addresses on the W-2s purport to be Monticello, New York and Liberty, New York, there appear to be deductions for Yonkers and New York City taxes. Further, no W-2s were submitted by any businesses to the IRS in 2008 in the name of BALDEV TAL.

23.   I have spoken to a New York State Police investigator who determined that in July 2008, the 2007 Mercedes with a Vehicle Identification Number ending in "3798" listed on the "Buyer's Order" submitted to Credit Union 3 was actually located in California on the premises of an automobile dealership.

### The January 2009 Automobile Loan Fraud

24.   I have reviewed documents and received information from a credit union ("Credit Union 4"), a branch of which is located in or about Harrisburg, Pennsylvania and learned the following:

     a. Credit Union 4's investigation determined that from in or about January 2009 through in or about February 2009, BINDER TAL, the defendant, applied for three automobile loans, a Visa line of credit and a signature (personal) loan.  The automobile loans were approved and three checks totaling $178,000 were mailed to BINDER TAL at the Academy Street address.  Credit Union 4 never received the title for any of the automobiles.

     b. On or about February 2, 2009, a Visa card, with a $20,000 credit limit, was issued BINDER TAL. TAL took various cash advances and made numerous purchases which exhausted the line of credit.  On or about July 9, 2009, a check payment was received and applied to the Visa account.  However, that check was later returned for insufficient funds and adjusted out of the account.  In the meantime, BINDER TAL had made another $9,000 cash advance with the Visa card, causing the final unpaid balance to be over $30,000.

c. On or about February 25, 2009, BINDER TAL was approved for the signature (personal) loan. The loan funds were transferred by BINDER TAL to a savings account with Credit Union 4 and then used to make payments to his loans, thus delaying discovery of the fraud. The signature (personal) loan was never repaid to Credit Union 4.

d. With regard to one of the automobile loans, in or about January 2009, BINDER TAL applied for a $70,000 automobile loan, from Credit Union 4, to allegedly purchase a used 2008 Mercedes S63 automobile with a Vehicle Identification number ending in "3224". He listed the Academy Street address as his residence and Gas Station 1 as his employer. He claimed his annual salary was $176,533.

e. During this time period, Credit Union 4 received a fax with: (i) a pay stub listing BINDER TAL's employer as Gas Station 1 and stating that his weekly salary was $11,400; and (ii) a W-2 stating that his total wages from "SF Engineering Gas Station 1" for the tax year 2008 was over $287,000.

f. On or about January 15, 2009, Credit Union 4 issued a check in the amount of $70,000 to BINDER TAL and "Empire Auto Group." Thereafter, on or about January 20, 2009, the check was deposited in Monticello, New York into a Bank of America account in the name of "Empire Motor Cars by Mintu." The signatory on that account is SHARIFUL MINTU, the defendant.

g. Several months later, an investigator with Credit Union 4 received a $7,700 official bank check from a national bank that had a branch in Middletown, New York. The investigator called the bank branch in Middletown, New York to verify the check and learned from a bank employee there that the remitter of the check was SHARIFUL MINTU on behalf of Gas Station 1 and that BINDER TAL was present with MINTU when the official bank check was issued.

h. To date, all of the loans and the Visa line of credit are seriously delinquent. The initial value of the loans

and line of credit issued to BINDER TAL was approximately $218,000. BINDER TAL currently owes Credit Union 4 more than $213,000.

25.   I have reviewed IRS records for BINDER TAL, the defendant, and learned that the W-2 that he submitted to Credit Union 4 is fraudulent because: (a) no W-2s were submitted by any business to the IRS in 2008 in the name of BINDER TAL; and (b) BINDER TAL did not file a United States Individual Income Tax Return, Form 1040, for the 2008 tax year.

### The March 2009 Automobile Loan Fraud

26.   I have reviewed documents and received information from Credit Union 1, a branch of which is located in or about Poughkeepsie, New York, and spoken with an individual ("Individual 1") who is an acquaintance of BALDEV TAL, a/k/a "David Tal," and SHARIFUL MINTU, the defendants, and I have learned the following:

a. On or about March 3, 2009, an application for an automobile loan, in the amount of $125,000, was submitted in Individual 1's name to Credit Union 1. The application stated that Individual 1 was employed by "SF Engineering" at the Raceway Road address and that Individual 1's monthly income was $14,388.72.  In support of the application a W-2 and a pay stub that purport to be from "SF Engineering" were submitted. On or about March 7, 2009, the loan was finalized and the $125,000 check was mailed by Credit Union 1 to Individual 1.

b. I have spoken to an investigator with the New York State Police who interviewed Individual 1.  He learned from Individual 1 that: (i) Individual 1 is an acquaintance of BALDEV TAL, a/k/a "David Tal," and SHARIFUL MINTU, the defendants; (ii) Individual 1 never worked for "SF Engineering"; (iii) Individual 1 was approached by BALDEV TAL and SHARIFUL MINTU and asked to co-sign a loan because Individual 1 had good credit; (iv) Individual 1 traveled to a branch of Credit Union 1 near Poughkeepsie, New York with BALDEV TAL and SHARIFUL MINTU; (v) Individual 1 went inside with BALDEV TAL and TAL spoke to a bank representative; (vi) Individual 1 remembers signing an electronic signature pad but did not know what the signature was for; (vii) when BALDEV

TAL told the bank representative that Individual 1
worked for TAL's father, Individual 1 tried to protest
but BALDEV TAL stopped Individual 1; (viii) When
Individual 1 received an envelope in the mail from
Credit Union 4, Individual 1 gave the envelope to BALDEV
TAL; (ix) BALDAV TAL opened the envelope which contained
the $125,000 check and had Individual 1 sign the check;
(x) Individual 1 was later contacted by Credit Union 1
and learned that a $59,000 automobile loan was taken out
in her name; and (xi) She was not aware of Credit Union
4's automobile loan.

27.   After mailing the $125,000 check to Individual 1,
Credit Union 1 determined that the loan was likely fraudulent and
stopped payment on the $125,000 check.

### The January 2014 through May 2014 Bank Fraud

28.   I have reviewed documents and received information
from financial institutions ("Bank 3", "Bank 4", "Bank 5", "Bank 6",
"Bank 7" and "Bank 8"), and I have learned the following:

a. On or about January 7, 2014, an individual identifying
himself as "Ashok Kumar," while online, opened accounts
at Bank 3. The account numbers for the accounts end in
1347 (the "1347 account"), 1350 (the "1350 account"),
1389 (the 1389 account"), 1376 (the "1376 account"),
1363 (the "1363 account"). All of the accounts are in
the name of "Haven Enterprise LLC" located in
Schuylkill, Pennsylvania. 17972. Kumar is the only
signatory on the accounts.

b. On or about January 28, 2014, an individual deposited
$70,751.07 in cash at Bank 3's branch in Somerville, New
Jersey. At his request, all of the funds were initially
deposited into the 1363 account. Immediately
thereafter, there was an online transfer of $70,800.00
from the 1363 account to the 1350 account. Next, at the
individual's request, the teller reversed the cash
deposit and deposited the cash into the 1376 account.
Immediately thereafter, there was an online transfer of
$70,800 from the 1376 account to the 1350 account.

c. There were additional transfers from the 1350 account
to, among other businesses, "Prime Gas."

12

Specifically, there were two wire transfers that day from the 1350 account to "Prime Gas" totaling $84,280.01.

d. Prior to leaving Bank 3's branch that day, the individual requested and received a return of the $70,751.07 cash deposit. In total, Bank 3's loss, because of the individual's transactions, was $141,379.14.

e. On or about January 29, 2014, the same individual, who went to Bank 3's branch in Somerville, New Jersey on January 28, 2014, deposited $80,431.31 in cash at Bank 3's branch in Phillipsburg, New Jersey. The cash was initially deposited into the 1347 account. Immediately thereafter, there was an online transfer of $80,450 from the 1347 account to the 1389 account. Then, there was: (i) a wire request from the 1389 account to an account for "Prime Gas" at Bank 4 in the amount of $41,000 and (ii) a wire request from the 1389 account to an account for "Prime Gas" at Bank 5 in the amount of $37,568.22.

f. Next, at that individual's request, the teller reversed the cash deposit and deposited the cash into the 1376 account. Immediately thereafter, there was an online transfer of $80,400 from the 1376 account to the 1389 account. Then, there was: (i) a wire request from the 1389 account to an account for "Prime Gas" at Bank 6 in the amount of $42,211.42 and (ii) a wire request from the 1389 account to an account for "Prime Gas" at Bank 4 in the amount of $40,025.64.

g. Prior to leaving Bank 3's branch that day, the individual requested and received a return of the $80,431.31 cash deposit. In total, Bank 3's loss, because of these transactions, was $160,710.28.

h. There was very little activity in these accounts at Bank 3 until January 2014. Bank 3 closed the accounts in February 2014.

29.   I have reviewed still photographs of the individual that were taken during the January 28, 2014, January 29, 2014 and March 27, 2014 transactions described above and compared them to a driver's license photograph of BALDEV TAL, the defendant. Based upon

my review of the photographs, it appears that BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," the defendant, was the individual engaged in the teller transactions described in paragraphs 28(b) and (e).

30.   I have also reviewed Bank 3's records concerning the Internet Protocol ("IP") address used to conduct the online transactions discussed in paragraph 28(b).   The IP address ends in "216."   I have reviewed records from the Internet Service provider for that IP address for the time period including January 28, 2014 and learned that the "216" IP address was assigned to a subscriber named "David Tal" at a residence on Overlook Road in Orefield, Pennsylvania.

## The October 2014 Automobile Loan Fraud

31.   I have reviewed documents and received information from a credit union ("Credit Union 5"), a branch of which is located in or about Philadelphia, Pennsylvania and learned the following:

a. On or about October 9, 2014, BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," the defendant, applied for a $30,000 automobile loan from Credit Union 5 to allegedly purchase a used 2014 Jeep Grand Cherokee automobile with a Vehicle Identification number ending in "4626". Thereafter, he provided what purported to be a "Buyer's Order", from "Chase Motors" located in Frackville, Pennsylvania, stating that the total due for the 2014 Jeep Grand Cherokee  with a Vehicle Identification Number ending in "4626" was $30,000. The "Buyer's Order" listed the Overlook Road address for BALDEV TAL.

b. On October 9, 2014, Credit Union 5 issued a check in the amount of $30,000 to "Chase Motors LLC."

c. On or about October 15, 2014, Credit Union 5 obtained the licensing details for "Chase Motors LLC" from the Pennsylvania Department of State.  Credit Union 5 learned that there were three representatives for "Chase Motors LLC".  One of the listed representatives/vehicle salespersons is SHARIFUL MINTU, the defendant.  Another of the listed representatives/vehicle salespersons is a co-conspirator not named herein ("CC-1"), who law enforcement officers have determined is a female

14

associate and shares a residence with BINDER TAL and BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," the defendants.

d. Credit Union 5's investigation determined that the 2014 Jeep Grand Cherokee with a Vehicle Identification Number ending in "4626" was located in Georgia and not for sale by Chase Motors LLC.

e. To date, the loan is delinquent and BALDEV TAL has not made any payments in satisfaction of the automobile loan to Credit Union 5.

**The October 2011 through December 2014 Personal Credit Card Fraud**

32. I have reviewed documents and received information from a financial institution ("Bank 9") and I have learned the following:

a. On or October 13, 2011, CC-1 applied for a personal credit card from Bank 9. On the application, CC-1 listed the Overlook Road address. CC-1 claimed that CC-1 was employed, as an "Executive Professional", by a company called "Prime Gas" and that her annual income was $265,000.

b. On or about January 8, 2014, CC-1 added BALDEV TAL, a/k/a "David Tal," a/k/a "Ashok Kumar," and BINDER TAL, the defendants, as authorized users on the Bank 9 credit card. Later, among other individuals, CC-1 added "Ashok Kumar" as an authorized user. Bank 9 was informed that all of the authorized users resided at the Overlook Road address.

c. Bank 9 was notified by a credit reporting company that CC-1 had filed numerous reports claiming fraudulent charges on the credit card issued by Bank 9 to CC-1 and the authorized users. Based on the reports, bank 9 issued new cards with different account numbers on three separate occasions.

d. In an attempt to increase CC-1's credit limit, on or about September 30, 2013, a pay stub that alleged to be from "Prime Gas" was submitted indicating that, as of

September 6, 2013, CC-1's salary to date for 2013 was "101,813.82."

e. From in or about June 2014 through in or about August 2014, authorized credit card users for Bank 9's credit card disputed at least seven purchases made from a vendor ("Vendor 1"), who supplied snacks and cigarettes to gas stations operated by BINDER TAL, the defendant, and "Ashok Kumar". The amount of the purchases from Vendor 1 in dispute are approximately $157,050.

f. On or about December 22, 2014 and December 24, 2014, an authorized user disputed six charges, totaling $22,377.20, made at a flooring vendor ("Vendor 2").

33.   I have spoken to an analyst assisting this investigation.  The analyst has spoken to Vendor 1 concerning the disputed purchases and Vendor 1 has informed the analyst that the purchases are not fraudulent because they were delivered to the gas stations operated by BINDER TAL, the defendant, and "Ashok Kumar". The analyst also spoke to Vendor 2. Vendor 2 informed the analyst that laminate flooring and carpeting were ordered by "Ashok Kumar" and installed at the Overlook Road address.

34.   I have reviewed IRS records for CC-1 and learned that: (i) CC-1's United States Individual Income Tax Return, Form 1040, for the 2011 tax year, states that CC-1's adjusted gross income was $38,675 and none of that income was derived from "Prime Gas"; and (ii) CC-1's United States Individual Income Tax Return, Form 1040, for the 2013 tax year, states that CC-1's adjusted gross income was $57,440 and of that income, only $38,540 was derived from "Prime Gas."

WHEREFORE, deponent prays that the above-named
defendants be arrested and imprisoned or bailed as the case may be.

GREG GHIOZZI
POSTAL INSPECTOR
UNITED STATES POSTAL INSPECTION SERVICE


Sworn to before me this
30th day of July 2015

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

17